UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| TRELLIS EARTH PRODUCTS, INC., | ) | CASE NO.  16-90205-BHL-11 |
| dba TRELLIS BIOPLASTICS, | ) | |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S FIRST DAY MOTION FOR ENTRY OF AN INTERIM ORDER
AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING
PURSUANT TO 11 U.S.C. §364(c), *NUNC PRO TUNC* TO PETITION DATE**

Trellis Earth Products, Inc. d/b/a Trellis Bioplastics, Debtor-in-Possession
herein, ("Trellis" or the "Debtor"), by counsel, hereby files this motion (the
"Financing Motion") respectfully requesting an interim order (the "Interim Order")
(a) authorizing Trellis to obtain postpetition secured loans (the "Postpetition Loans"
or "Chapter 11 Financing") from Golden Properties, LTD, or its successor, assign, or
designee ("Golden" or the "Lender") pursuant to the terms and conditions of the
Postpetition Financing and Security Agreement (the "Postpetition Loan
Agreement"); and (b) scheduling an interim hearing (the "Interim Hearing")
pursuant to Bankruptcy Rules 4001(c) and (d).  In support of its Financing Motion,
Trellis respectfully represents the following:

## I. SUMMARY OF RELIEF REQUESTED AND TERMS OF AND CONDITIONS TO THE CHAPTER 11 FINANCING (FRBP 4001(C) AND LOCAL BANKRUPTCY RULE B-4001-2)

1.     Trellis is seeking authority to incur debt under Section 364(c) of the
Bankruptcy Code.  The purpose of the Postpetition Loans is to cover Trellis' out-of-
pocket administrative and operating costs of preserving and selling the assets of the

Debtor.  Trellis intends to seek Court approval of a sale of substantially all of the Trellis' assets pursuant to Section 363 of the Bankruptcy Code (the "Sale").  After arms-length negotiations with Lender, Trellis has successfully negotiated an agreement for the Chapter 11 Financing.  Lender has agreed to provide secured loans to Trellis in an amount not to exceed $400,000.  As part thereof, Lender has agreed to a carve-out to cover fees payable to cover Trellis' allowed legal fees and costs in connection with this proceeding and the Sale in an amount not to exceed $75,000 (the "Carve-Out").  A copy of the Postpetition Loan Agreement is attached hereto as Exhibit "A" and incorporated herein. The Postpetition Loan Agreement and all related loan documents executed in connection therewith shall collectively be referred to as the "Postpetition Loan Documents."

2.    Pursuant to FBRP 4001(c) and Local Rule B-4001-2, Trellis makes the following disclosures as to the terms and conditions of the proposed Chapter 11 Financing:

a. Golden shall advance $140,000.00 (the "Initial Advance") to Trellis upon entry of an Interim Order, and Trellis shall spend the Initial Advance in accordance with the budget attached hereto as Exhibit "B".

b. The Postpetition Loan Agreement allows $40,000.00 of the Initial Advance to be paid to Trellis's proposed counsel.

c. The Initial Advance and balance of the Postpetition Loans shall accrue interest at 12%, and interest only payments shall be made on a monthly basis to Golden on the last day of each month and commencing February 29, 2016.

d. The Postpetition Loan Agreement shall mature on June 15, 2016, or any earlier date on which the Postpetition Loans become due and

payable pursuant to section 7.2 of the Postpetition Loan Agreement.

e. The Postpetition Loan Agreement allows an additional $35,000.00 to be paid to Trellis's proposed counsel from subsequent advances.

f. After the Initial Advance, Golden shall advance up to an additional $260,000.00 subject to the terms and conditions of the Postpetition Loan Agreement.

g. The Lender shall be granted a superpriority administrative claim under Section 364(c)(1) of the Bankruptcy Code.

h. The Lender shall be granted a first security interest on all accounts receivable or other assets created, acquired or arising after the Petition Date under Section 364(c)(2) of the Bankruptcy Code.

i. The Lender shall be granted a security interest on all existing assets of the Debtor junior to all other liens and interests in favor of any creditors or other persons, including the First Financial First Priority Collateral under 364(c)(3) of the Bankruptcy Code.

## II. JURISDICTION AND VENUE

3.     On February 17, 2016, (the "Petition Date"), Trellis filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101 *et seq*., as amended (the "Bankruptcy Code").  Trellis continues to operate its businesses and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.     This court has jurisdiction over this motion pursuant to 28 U.S.C. §§1157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.  This motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

5.     This motion is a First Day Motion pursuant to S.D. Ind. L.R. B-9013-3.

6.     No Trustee or examiner has been appointed in this chapter 11 case. No committee of unsecured creditors has yet been appointed in this chapter 11 case.

7.      Trellis has discussed the filing of its case with the Office of the United States Trustee for the Southern District of Indiana (the "Trustee") and has advised the Trustee of its first day motions.

8.      The statutory predicates for the relief requested herein are sections 105, 364 and 507 of the Bankruptcy Code and Rules 4001(c) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "FRBP").

### III. PREPETITION INDEBTEDNESS BACKGROUND

9.      Lender extended credit to Trellis under a 12% Senior Promissory Note dated October 29, 2014 in the principal amount of $3,410,530, as amended ("Prepetition Note").  Trellis's obligations under the Prepetition Note are secured by a Security Agreement dated June 17, 2014 granting to the Lender a security interest in substantially all of Trellis assets as more specifically described therein ("Prepetition Security Agreement"), which is subject to the terms of an Intercreditor and Subordination Agreement executed by Lender and First Financial Bank, National Association ("First Financial") subordinating Lender's security interest in the Company's assets solely with respect to the "First Financial First Priority Collateral" as defined therein ("Subordination Agreement").  The Prepetition Note, Prepetition Security Agreement and Subordination Agreement, together with all amendments, modifications and restatements thereto, and all other related documents shall collectively be referred to herein as the "Prepetition Loan Documents").

10.     <u>Existing Claims</u>:   As of the expiration of the Challenge Period and except with respect to claims then pending in an action commenced in the Bankruptcy Court by Trellis against Lender (i) challenging the validity, enforceability, perfection, or priority of any Prepetition Loan or liens with respect thereto, or (ii) asserting any Avoidance Actions against the Lender, Trellis acknowledges and agrees that:

(a)     As of the Petition Date, (i) Lender has a valid claim for the principal amount owed to Lender by Trellis pursuant to the Prepetition Note in an amount not less than $3,410,530.00; and (ii) Lender has a valid claim for the principal amount owed to Lender by Trellis pursuant to a 10% Note dated October 29, 2014 in an amount not less than $500,000; and

(b)     The Prepetition Note is secured by substantially all of the assets of Trellis subject to the terms of the Subordination Agreement and the senior lien of First Financial on the First Financial First Priority Collateral.

11.     Trellis believes that the proposed provisions of the Final Order will adequately protect Lender's security interests and are appropriate to obtain the Chapter 11 Financing.

## IV. RELIEF REQUESTED

12.     By this Financing Motion, Trellis seeks, among other things, under Section 105 and 364 of the Bankruptcy Code, this Court's (a) authorization to obtain

postpetition financing from Lender pursuant to the terms and conditions set forth herein, the Postpetition Loan Documents and the Interim Order; and (b) entry of an Interim Order.

13.     The Interim Order shall approve the Lender's agreement to allow the advances of the Postpetition Loans pursuant to the Budget to assist Trellis in preserving the Debtor's assets and marketing and selling the Debtor's assets in the Sale.

## V. BASIS FOR RELIEF REQUESTED

14.     Section 364(a) of the Bankruptcy Code authorizes a debtor-in-possession to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1).  If the debtor-in-possession is unable to obtain unsecured credit, then the court, after notice and a hearing, may authorize the debtor-in-possession to obtain credit or incur debt:

> (a) with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Code;
>
> (b) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (c) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

15.     Given Lender holds a lien on substantially all of Trellis' assets, Trellis is not able to obtain credit on an unsecured basis to administer this estate.

16.     Rules 4001(c) of the Bankruptcy Rules govern the procedures for obtaining authorization to receive postpetition financing and provide, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

FRBP 4001(c). Accordingly, the Court is authorized to grant the relief requested herein after notice and a hearing.

17.     The terms and provisions of the Chapter 11 Financing have been negotiated at arm's length and in good faith. In addition, the terms and provisions of the Chapter 11 Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which Trellis could obtain the needed postpetition financing.

18.     Having determined that financing is available only under Section 364 of the Bankruptcy Code, Trellis negotiated the Chapter 11 Financing pursuant to its business judgment and experience. Provided that this type of judgment does not run afoul of the provisions and policies underlying the Bankruptcy Code, courts grant a debtor or trustee considerable deference in acting in accordance with its business judgment. See, e.g., *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *Bray v. Shenandoah Fed. Sav. & Loan Ass'n*, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession

financing necessary to sustain seasonal business); *In re Ames Department Stores*, 115 B.R. 34, 40 (S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under Section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers of their purpose is not so much to benefit the estate as it is to benefit party-in-interest").

19.    The Chapter 11 Financing provides essential, sufficient liquidity to enable Trellis to preserve, market and sell the Debtor's assets. Accordingly, Trellis believes that the approval of the Chapter 11 Financing is in the best interests of the estate, creditors, and all parties-in-interest. Moreover, for the reasons hereinabove stated, Lender should be accorded the benefits inuring under Section 364 of the Bankruptcy Code.

## VI. NOTICE WITH RESPECT TO FINANCING MOTION

20.    Trellis shall provide notice of this Financing Motion and the Interim Hearing in accordance with Local Rule B-9013-3(d).

## VII. NO PRIOR REQUEST

21.    No previous request for the relief requested herein has been made to this Court in this Case.

WHEREFORE, Trellis respectfully requests that the Court set a hearing to consider approval of the Chapter 11 Financing and the entry of an Interim Order and grant such other relief as is just and proper.

Respectfully submitted,

TUCKER HESTER BAKER & KREBS, LLC

By _____/s/ *David R. Krebs*_____
       David R. Krebs
       John J. Allman
       Tucker Hester Baker & Krebs, LLC
       One Indiana Square, Suite 1600
       Indianapolis, IN 46204
       (317) 833-3030
       Fax: (317) 833-3031
       Email: dkrebs@thbklaw.com
       Email: jallman@thbklaw.com

*Proposed Attorneys for Debtor*

## POSTPETITION FINANCING AND SECURITY AGREEMENT

This **POSTPETITION FINANCING AND SECURITY AGREEMENT** is dated as of February \_\_\_, 2016 (as amended, restated, supplemented or otherwise modified from time to time, this "<u>Agreement</u>") and is by and between debtor in possession **TRELLIS EARTH PRODUCTS, INC.** (the "<u>Company</u>") and **GOLDEN PROPERTIES, LTD**, or its successor, assign, or designee (the "<u>Lender</u>").

### BACKGROUND

A.     Lender extended credit to the Company under a 12% Senior Promissory Note dated October 29, 2014 in the principal amount of $3,410,530, as amended ("<u>Prepetition Note</u>"). The Company's obligations under the Prepetition Note are secured by a Security Agreement dated June 17, 2014 granting to the Lender a security interest in all of the Company's assets as more specifically described therein ("<u>Prepetition Security Agreement</u>"), which is subject to the terms of an Intercreditor and Subordination Agreement executed by Lender and First Financial Bank, National Association ("<u>First Financial</u>") subordinating Lender's security interest in the Company's assets solely with respect to the "First Financial First Priority Collateral" as defined therein ("<u>Subordination Agreement</u>"). The Prepetition Note, Prepetition Security Agreement and Subordination Agreement, together with all amendments, modifications and restatements thereto, and all other related documents shall collectively be referred to herein as the "<u>Prepetition Loan Documents</u>").

B.     On February 18, 2016, the Company filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") pending in the Bankruptcy Court for the Southern District of Indiana, New Albany Division (the "<u>Bankruptcy Court</u>").

C.     The Company intends to seek approval from the Bankruptcy Court to sell substantially all of its assets (the "<u>Sale</u>") pursuant to section 363 of the Bankruptcy Code.

D.     The Company wishes to receive, and the Lender wishes to provide, postpetition loans, advances and other financial accommodations to allow for the preservation of the Company's assets and to allow the Company to seek Bankruptcy Court approval of the Sale.

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**SECTION 1.**     **Definitions**

**1.1**     **Asset Purchase Agreement** shall mean an asset purchase agreement for the sale of all or substantially all of the assets of the Company on terms acceptable to the Lender.

**1.2**     **Avoidance Actions** shall mean claims and actions arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code.

**1.3**     **Bankruptcy Case** shall mean the chapter 11 bankruptcy case filed by the Company in the Bankruptcy Court that is pending under case number 16-90205-BHL-11.



EXHIBIT

A

**1.4    Bankruptcy Code** shall have the meaning set forth in the recitals of this Agreement.

**1.5    Bankruptcy Court** shall have the meaning set forth in the recitals of this Agreement.

**1.6    Bid Procedures Order** shall mean a bid procedures order related to the Sale in a form acceptable to the Lender and approved by the Bankruptcy Court.

**1.7    Borrowing Notice** shall have the meaning set forth in Section 2.3.

**1.8    Budget** means the budget of projected operating income and expenses of the Company as set forth on Schedule 1.

**1.9    Business Day** shall mean any day on which banks in Indianapolis, Indiana are open for business.

**1.10    Carve-Out Amount** shall mean an amount not to exceed $75,000 to cover the Company's allowed legal fees and costs.  The Carve-Out Amount shall be reduced by the amount of any Postpetition Loans used to fund the Company's allowed legal fees and costs.

**1.11    Challenge Period** shall mean the time period from the date of this Agreement until the later of the date of the entry of the Final Order and April 25, 2016.

**1.12    Collateral** shall mean all of the Company's right, title and interest in the following assets:

(a)    All goods (and embedded computer programs and supporting information included within the definition of "goods" under the Uniform Commercial Code) and equipment now owned or hereafter acquired, including, without limitation, all laboratory equipment, computer equipment, office equipment, machinery, fixtures, vehicles (including motor vehicles and trailers), and any interest in any of the foregoing, and all attachments, accessories, accessions, replacements, substitutions, additions, and improvements to any of the foregoing, wherever located;

(b)    All inventory now owned or hereafter acquired, including, without limitation, all merchandise, raw materials, parts, supplies, packing and shipping materials, work in process and finished products including such inventory as is temporarily out of the Company's custody or possession or in transit and including any returns upon any accounts or other proceeds, including insurance proceeds, resulting from the sale or disposition of any of the foregoing and any documents of title representing any of the above, and the Company's books relating to any of the foregoing;

(c)    All contract rights and general intangibles (including Intellectual Property), now owned or hereafter acquired, including, without limitation, goodwill, license agreements, franchise agreements, blueprints, drawings, purchase orders, customer lists, route lists, infringements, claims, software, computer programs,

computer disks, computer tapes, literature, reports, catalogs, design rights, income tax refunds, payment intangibles, commercial tort claims, payments of insurance and rights to payment of any kind;

(d)    All now existing and hereafter arising accounts, contract rights, royalties, license rights, license fees and all other forms of obligations owing to the Company arising out of the sale or lease of goods, the licensing of technology or the rendering of services by the Company (subject, in each case, to the contractual rights of third parties to require funds received by the Company to be expended in a particular manner), whether or not earned by performance, and any and all credit insurance, guaranties, and other security therefor, as well as all merchandise returned to or reclaimed by the Company and the Company's books relating to any of the foregoing;

(e)    All documents, cash, deposit accounts, letters of credit (whether or not the letter of credit is evidenced by a writing), certificates of deposit, instruments, promissory notes, chattel paper (whether tangible or electronic) and investment property, including, without limitation, all securities, whether certificated or uncertificated, security entitlements, securities accounts, commodity contracts and commodity accounts, and all financial assets held in any securities account or otherwise, wherever located, now owned or hereafter acquired and the Company's books relating to the foregoing;

(f)    Any and all claims, rights and interests in any of the above and all substitutions for, additions and accessions to and proceeds thereof, including, without limitation, insurance, condemnation, requisition or similar payments and proceeds of the sale or licensing of Intellectual Property; and

(g)    All accounts receivable or other assets created, acquired or arising after the Petition Date, including any royalties payable to the Company under section 365(n) of the Bankruptcy Code.

Notwithstanding the foregoing, the term "Collateral" shall not include any causes of action of the Estate under Sections 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

1.13    **Commitment** shall mean the obligation of the Lender to make Postpetition Loans pursuant to Section 2.1 of this Agreement in an aggregate principal amount not to exceed $400,000.

1.14    **Company** shall have the meaning set forth in the recitals of this Agreement.

1.15    **Default** shall mean any event specified in Section 7 hereof, whether or not any requirement for the giving of notice, the lapse of time, or both, or any other condition, event or act, has been satisfied.

1.16    **Estate** shall mean the estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

3

**1.17** **Event(s) of Default** shall have the meaning set forth in <u>Section 7</u> of this Agreement.

**1.18** **Final Order** shall mean the final financing order in a form approved by Lender authorizing the granting of credit by the Lender to the Company pursuant to this Agreement and Section 364 of the Bankruptcy Code entered by the Bankruptcy Court in the Bankruptcy Case.

**1.19** **First Financial** shall have the meaning set forth in the recitals of this Agreement.

**1.20** **First Financial First Priority Collateral** shall have the meaning set forth in the recitals of this Agreement.

**1.21** **Intellectual Property** means all of the Company's right, title and interest in and to patents, patent rights (and applications and registrations therefor and divisions, continuations, renewals, reissues, extensions and continuations-in-part of the same), trademarks and service marks (and applications and registrations therefor and the goodwill associated therewith), inventions, copyrights (including applications and registrations therefor and like protections in each work or authorship and derivative work thereof), mask works (and applications and registrations therefor), trade names, trade styles, software and computer programs, source code, object code, trade secrets, methods, processes, know how, drawings, specifications, descriptions, and all memoranda, notes, and records with respect to any research and development, all whether now owned or subsequently acquired or developed by the Company and whether in tangible or intangible form or contained on magnetic media readable by machine together with all such magnetic media (but not including embedded computer programs and supporting information included within the definition of "goods" under the Uniform Commercial Code).

**1.22** **Interim Order** shall mean the interim financing order in a form approved by Lender authorizing the granting of credit by the Lender to the Company pursuant to this Agreement and Section 364 of the Bankruptcy Code entered by the Bankruptcy Court in the Bankruptcy Case.

**1.23** **Maturity Date** shall mean (i) June 15, 2016 or (ii) any earlier date on which the Postpetition Loans become due and payable pursuant to <u>Section 7.2</u>.

**1.24** **Person** shall mean any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

**1.25** **Petition Date** shall mean February 18, 2016.

**1.26** **Postpetition Loan Documents** shall mean this Agreement and any promissory notes, security agreements or other agreements or documents executed from time to time in connection with this Agreement, all as may be renewed, amended, extended, increased or supplemented from time to time.

**1.27** **Postpetition Loan Obligations** shall mean all obligations, including all loans, advances and extensions of credit made or to be made by the Lender to the Company pursuant to this Agreement (including, without limitation, all Postpetition Loans) or any Postpetition Loan Document, whether now in existence or incurred by the Company from time to time hereafter;

4

whether principal, interest, fees, costs, expenses or otherwise; whether such indebtedness is absolute or contingent, joint or several, matured or unmatured, direct or indirect. For the avoidance of doubt, Postpetition Loan Obligations shall include (i) all indebtedness and obligations owing to the Lender and/or any affiliate thereof by the Company under any Postpetition Loan Document, and (ii) all attorneys' fees and costs paid or incurred by Lender as further set forth in Section 5.3.

1.28    **Postpetition Loans** shall mean the loans made by the Lender to the Company pursuant to Section 2.1.

1.29    **Prepetition Loan** means any loan made to the Company by Lender pursuant to the Prepetition Note or other Prepetition Loan Documents prior to the Petition Date.

1.30    **Prepetition Loan Documents** shall have the meaning set forth in the recitals of this agreement.

1.31    **Prepetition Note** shall have the meaning set forth in the recitals of this agreement.

1.32    **Sale** shall have the meaning set forth in the recitals of this Agreement.

1.33    **Sale Motion** shall mean a motion filed by the Company seeking Bankruptcy Court approval of an Asset Purchase Agreement with a stalking horse bidder, subject to an auction process and higher and better offers.

1.34    **Security Interest** shall have the meaning set forth in Section 9.

1.35    **Subordination Agreement** shall have the meaning set forth in the recitals of this Agreement

1.36    **Successful Bidder** shall mean the Person submitting the highest and best offer for any of the assets to be purchased and sold pursuant to the Bid Procedures Order, which is then consummated.

1.37    **Uniform Commercial Code** shall mean the Indiana Uniform Commercial Code, as in effect from time to time.

## SECTION 2.    Postpetition Loans

2.1    Advances:  The Lender shall, at its sole discretion, and subject to the terms and conditions of this Agreement, make Postpetition Loans as provided in clause (a) or (b) below; provided, however, that the aggregate outstanding principal amount of such Postpetition Loans shall not exceed the Commitment.  Subject to the terms and conditions of this Agreement, including but not limited to Section 3:

(a)    the Lender may make Postpetition Loans to the Company to pay suppliers for approved purchase orders or to pay operating expenses necessary to the Company's fulfillment of approved purchase orders consistent with the Budget; and

**(b)**     the Lender may make Postpetition Loans to the Company to fund the Company's professional fees and expenses in an amount not to exceed $75,000.  The aggregate principal amount of Postpetition Loans advanced to fund professional fees and expenses shall, dollar for dollar, reduce the Carve-Out Amount.

**2.2**     Borrowing Notice:  Whenever the Company desires the Lender to make a Postpetition Loan pursuant to this Section 2, the Company shall give the Lender notice in writing substantially in the form of the borrowing notice attached hereto as Exhibit A (the "Borrowing Notice") specifying (i) the amount to be borrowed and the purchase order to be funded, (ii) the expenses to be paid (and attaching all related documentation evidencing the expenses); (iii) the requested borrowing date (which shall be a Business Day and shall be prior to the Maturity Date, and prior to any effective termination date of this Agreement, all as further set forth herein), and (iv) the other matters set forth in the Borrowing Notice.  All Borrowing Notices must be received by an officer of the Lender no later than 1:00 p.m. prevailing Pacific Time two Business Days prior to the borrowing date.  So long as the amount of the Postpetition Loan requested by the Company is in accordance with the Budget, no Event of Default has occurred and is continuing, and the conditions to funding set forth in Section 3 are satisfied, the Lender shall not unreasonably withhold approval of such request.  The Lender shall make any Postpetition Loans to such account as shall be notified by the Company to the Lender in writing.

**2.3**     Postpetition Loan Documents:  Upon the request of the Lender, the Company shall execute promissory notes, financing statements, security agreements and other documentation reasonably requested to evidence or perfect the debt to be advanced and the security interests granted hereunder.

**SECTION 3.  Conditions to Effectiveness and Funding.**

**3.1**     This Agreement shall not be effective until the entry of an Interim Order by the Bankruptcy Court approving this Agreement.   With the exception of the initial advance in an amount not to exceed $140,000 in accordance with the Budget, no advance will be made by the Lender under this Agreement unless all of the following conditions are satisfied or waived by Lender in the Lender's sole discretion:

**(a)**     The Bid Procedures Order and the Final Order shall have been entered by the deadlines set forth in Section 7.1 herein and shall be in full force and effect, and not have been reversed, vacated, or stayed;

**(b)**     The Company shall have filed the Sale Motion by the deadline set forth in Section 7.1 herein;

**(c)**     No Default or Event of Default shall have occurred and be continuing under this Agreement; and

**(d)**     Such borrowing shall not violate any requirement of applicable law or be enjoined.

6

**SECTION 4.   Representations, Warranties and Covenants**

**4.1**     Budget; Weekly Reporting:  The Postpetition Loans shall be used in accordance with the Budget, except as the Lender may have otherwise agreed in writing.  At Lender's request, not more frequently than weekly, the Company shall provide a report of actual expenses compared to the Budget.

**4.2**     Sale.  The Company shall in good faith seek Bankruptcy Court approval of the Sale.

**4.3**     Company Negative Covenants:  Until termination of this Agreement and payment and satisfaction of all Postpetition Loan Obligations, the Company agrees that, without the prior written consent of the Lender, except as otherwise herein provided, the Company will not sell, lease, assign, transfer or otherwise dispose of the Company's assets, which are subject to a lien in favor of Lender, except as otherwise permitted by this Agreement or as part of the Sale.  Notwithstanding the previous sentence, the Company is authorized to pay all prepetition accounts receivable constituting First Financial First Priority Collateral to First Financial as it is collected.

**4.4**     Company Representations:  The Company hereby represents and warrants to the Lender that, conditioned upon and pursuant to the Interim Order and Final Order, the Company will have all authority necessary to execute and deliver this Agreement and the other Postpetition Loan Documents to which it is a party.

**SECTION 5.     Repayment, Interest, and Fees**

**5.1**     Interest Payment; Rate:  The Postpetition Loans shall bear interest at a fixed rate per annum equal to 12%.  The rate hereunder for Postpetition Loans shall be calculated based on a 360-day year and actual days elapsed.  Interest on the Postpetition Loans shall be payable to the Lender on the last day of each month during the term of this Agreement.

**5.2**     Principal Payment:  The Company hereby agrees to pay the Lender, on or before the Maturity Date, the entire unpaid principal of and interest on all Postpetition Loan Obligations.

**5.3**     Reimbursement Obligations.  On the Maturity Date, the Company shall reimburse Lender for all reasonable attorneys' fees and costs incurred by Lender in connection with (a) the negotiation and preparation of any of the Postpetition Loan Documents, any amendment or modification thereto; the approval and administration of the Postpetition Loan Documents and the transactions contemplated thereby; and action taken to perfect or maintain the perfection or priority of Lender's liens with respect to any of the Collateral; and (b) any effort to verify, protect, preserve, or restore any of the Collateral or to collect, sell, liquidate or otherwise dispose of or realize upon any of the Collateral; the monitoring of, participation in and protection or enforcement of any rights or remedies of Lender in the Bankruptcy Case; and any action taken by Lender to enforce any of the rights or remedies of Lender or to collect the Postpetition Loan Obligations or payments with respect to any of the Collateral; provided that, reimbursable expenses pursuant to clauses (a) and (b) shall not exceed $35,000.  All amounts chargeable to the Estate under this Section 5.3 shall constitute Postpetition Loan Obligations that are secured by all

of the Collateral (as set forth in Section 9).  Nothing in this Section 5.3 shall limit secured claims for reimbursement of Lender's expenses pursuant to the Prepetition Loan Documents, to the extent not reimbursable hereunder.

**5.4**    Application of Proceeds:  Any proceeds received upon liquidation of Collateral (with the exception of the First Financial First Priority Collateral) or enforcement of the Lender's rights hereunder shall be applied:

**(a)**    First, to pay professional fees and expenses and Company fees in connection with the Sale in an amount, in aggregate, not to exceed the Carve-Out Amount;

**(b)**    Second, to accrued attorneys' fees and costs, as set forth in Section 5.3, constituting the Postpetition Loan Obligations;

**(c)**    Third, to the Company's obligations under the Prepetition Note;

**(d)**    Fourth, to principal and any other Postpetition Loan Obligations until the Postpetition Loan Obligations, including accrued and unpaid interest, have been paid in full; and

**(e)**    Fifth, to the Company to be held for the benefit of creditors of the Estate, in such priority as to which they may be entitled under the Bankruptcy Code and applicable law.

**5.5**    Form of Payment:  Notwithstanding any provision of this Agreement to the contrary, all payments by the Company under this Agreement, whether for principal, interest, fees, costs, indemnities, expenses or otherwise, shall be payable in United States dollars at the Lender's office specified in Section 10.6 of this Agreement without setoff, counterclaim or other deduction of any kind.

**SECTION 6.    Settlement**

**6.1**    Existing Claims:  As of the expiration of the Challenge Period and except with respect to claims then pending in an action commenced in the Bankruptcy Court by the Company against Lender (i) challenging the validity, enforceability, perfection, or priority of any Prepetition Loan or liens with respect thereto, or (ii) asserting any Avoidance Actions against the Lender, the Company acknowledges and agrees that:

**(a)**    As of the Petition Date, (i) Lender has a valid claim for the principal amount owed to Lender by the Company pursuant to the Prepetition Note in an amount not less than $3,410,530.00; and (ii) Lender has a valid claim for the principal amount owed to Lender by the Company pursuant to a 10% Note dated October 29, 2014 in an amount not less than $500,000;

**(b)**    The Prepetition Note is secured by substantially all of the assets of the Company subject to the terms of the Subordination Agreement and the senior lien of First Financial on the First Financial First Priority Collateral;

**(c)**    Upon consummation of the Sale, Lender shall retain an allowed claim in an amount equal to the Postpetition Loan Obligations and the Prepetition Note, less (1) the amount of any cash proceeds of the Sale that are actually paid to the Lender or assumption of debt if

approved by Lender in respect of the Postpetition Loan Obligations and the Prepetition Note, or (2) if the Lender is the Successful Bidder, the amount of Lender's credit bid of secured debt related to the Postpetition Loan Obligations and the Prepetition Note.  If the Lender is the Successful Bidder, the credit bid of the Lender will include a commitment to fund allowed professional fees and expenses and Company fees in connection with the Sale in an amount, in aggregate, not to exceed the Carve Out Amount;

    **(d)**    The Company and the Estate have no Avoidance Actions against the Lender; and

    **(e)**    The Lender shall be paid from the proceeds of Sale as provided in Section 5.4 of this Agreement at closing without defense, setoff, subordination, counterclaim or deduction of any kind.

    **6.2**    <u>506(c) Waiver</u>:  In consideration for Lender's obligation to make Postpetition Loans pursuant to this Agreement, the Company hereby waives any and all claims it may now or hereafter have against Lender arising under section 506(c) of the Bankruptcy Code.

    **6.3**    <u>Release Acknowledgement</u>:  The Company understands, acknowledges and agrees that the acknowledgements, agreements, and releases set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such releases.  The Company agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the releases set forth when made herein.

**SECTION 7.**    **Events of Default and Remedies**

    **7.1**    <u>Events of Default</u>:  Notwithstanding anything herein to the contrary, each of the following shall constitute an "<u>Event of Default</u>":

    **(a)**    failure of the Company to pay when due any principal or interest of the Postpetition Loan Obligations;

    **(b)**    breach by the Company of any other warranty, representation or covenant contained herein; <u>provided</u> that such Default by the Company of any of such warranties, representations or covenants shall not be deemed to be an Event of Default unless and until such Default shall remain unremedied to the Lender's satisfaction for a period of seven (7) days from the date of notice of such breach;

    **(c)**    breach by Company of any warranty, representation or covenant of <u>Section 4</u> hereof;

    **(d)**    dismissal of the Bankruptcy Case;

    **(e)**    any Interim Order or Final Order shall be entered that is not substantially in the form approved by the Lender or shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written

consent of the Lender (and no such consent shall be implied from any other authorization or acquiescence by the Lender);

    **(f)**    the Final Order shall not have been entered by the Bankruptcy Court on or before March 25, 2016;

    **(g)**    the Sale Motion shall not have been filed with the Bankruptcy Court by March 10, 2016;

    **(h)**    the Bid Procedures Order shall not have been entered by the Bankruptcy Court on or before March 25, 2016;

    **(i)**    a material default by the Company shall have occurred and be continuing under any Asset Purchase Agreement; provided, that, such default by the Company shall not be deemed to be an Event of Default unless and until such default shall remain unremedied to the Lender's satisfaction for a period of seven (7) days from the date of notice of such breach or the Asset Purchase Agreement is terminated;

    **(j)**    the entry of an order in the Bankruptcy Case granting a superpriority administrative claim equal or superior to the claim of the Lender;

    **(k)**    the entry of an order in the Bankruptcy Case granting a lien or security interest in the Collateral equal or superior to the lien of the Lender; or

    **(l)**    the entry of an order granting relief from or modifying the automatic stay under section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on any Collateral or to assert any claim against or rights in respect of any Collateral to the extent such affected Collateral or claim has a value in excess of $100,000.

    **7.2**    <u>Acceleration</u>:  Upon the occurrence and during the continuance of an Event of Default that has not been waived by the Lender, the Lender may declare to the Company by written notice that the Lender shall make no further Postpetition Loans unless such Default or Event of Default is waived in writing by Lender or cured to the satisfaction of the Lender.  Upon the occurrence of an Event of Default, the Lender may (a) declare that all Postpetition Loan Obligations are immediately due and payable; and (b) immediately terminate this Agreement upon notice to the Company.  The exercise of any option is not exclusive of any other option, which may be exercised at any time by the Lender in its discretion, and is in addition to any other rights granted to the Lender under any other agreement.

    **7.3**    <u>Remedies</u>:  Upon the occurrence and during the continuance of an Event of Default and subject to Lender obtaining relief from stay:  Lender may exercise in respect of the Collateral, in addition to other rights and remedies provided for herein, in the other Postpetition Loan Documents, or otherwise available to it, all the rights and remedies of a secured party on default under the Uniform Commercial Code, the Bankruptcy Code or any other applicable law. The Company agrees that, to the extent notice of sale shall be required by law, at least 10 days notice to the Company of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification and specifically such notice shall constitute a reasonable "authenticated notification of disposition" within the meaning of

Section 9-611 of the Uniform Commercial Code.  Lender shall not be obligated to make any sale of Collateral regardless of notice of sale having been given.  Lender may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

**7.4**    Remedies Cumulative:  Each right, power, and remedy of Lender as provided for in this Agreement or in the other Postpetition Loan Documents or now or hereafter existing at law or in equity or by statute or otherwise shall be cumulative and concurrent and shall be in addition to every other right, power, or remedy provided for in this Agreement or in the other Postpetition Loan Documents or now or hereafter existing at law or in equity or by statute or otherwise, and the exercise or beginning of the exercise by Lender, of any one or more of such rights, powers, or remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights, powers, or remedies.

## SECTION 8.    Termination

**8.1**    Notwithstanding any other provision herein to the contrary, the Lender may terminate this Agreement (a) immediately upon the occurrence of an Event of Default, (b) on the Maturity Date, or (c) upon the consummation of the transactions contemplated by the Sale.

**8.2**    Subject to Section 5.2, all Postpetition Loan Obligations shall become due and payable as of any termination of this Agreement, whether under this Section 8 or Section 7 hereof.

**8.3**    In the event of Lender's termination of this Agreement prior to advance of the full amount of the Postpetition Loans under Section 2, Lender shall commit to advance sufficient funds to pay in full all allowed fees and expenses incurred in accordance with the Budget through the date on which such termination occurs, provided that funds advanced pursuant to this Section 8.3 together with Postpetition Loans previously advanced, shall not exceed the Commitment.

## SECTION 9.    Security Interest

**9.1**    Grant of Security:  As security for the payment in full of principal, interest and performance of the Postpetition Loan Obligations, the Company hereby grants to the Lender a security interest in the Collateral and all Proceeds arising therefrom (the "Security Interest").

**9.2**    Priority:  To the extent permitted by applicable law, the Security Interest, the priority of the Security Interest, and the administrative priorities and other rights and remedies granted to Lender pursuant to this Agreement, the Final Order and the other Postpetition Loan Documents (specifically including but not limited to the existence, validity, enforceability, extent, perfection and priority of the Security Interest) and the administrative priority provided herein and therein shall not be modified, altered or impaired in any manner by any other financing or extension of credit or incurrence of debt by the Estate or the Company (pursuant to Section 364 of the Bankruptcy Code or otherwise), or by any dismissal of the Bankruptcy Case, or by any other act or omission whatsoever.  Without limitation, notwithstanding any such order, financing, extension, incurrence, dismissal, conversion, act or omission, to the extent permitted by applicable law:

11

**(a)**      upon entry of the Interim Order and Final Order the Security Interest shall constitute valid, binding, continuing, enforceable and fully-perfected liens on the Collateral and (i) shall be senior on all accounts receivable or other assets created, acquired or arising after the Petition Date; and (ii) shall be junior to all other liens and interests in favor of any creditors or other Persons, including the First Financial First Priority Collateral;

**(b)**      the Security Interest shall continue to be valid, binding, continuing, enforceable and fully-perfected without the necessity for Lender to file any financing statements or to otherwise perfect the Security Interest under applicable non-bankruptcy law or to take any other action in order to validate or perfect the Liens and security interests granted by or pursuant to this Agreement, the Final Order or any other Postpetition Loan Document; and

**9.3**      To the extent permitted by applicable law, the Company hereby agrees that (a) the Postpetition Loan Obligations shall constitute allowed administrative expenses in the Bankruptcy Case having priority over all administrative expenses of and unsecured claims against the Estate now existing or hereafter arising, of any kind or nature whatsoever, including without limitation all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, except budgeted expenses actually incurred and Company's attorneys' fees and expenses in connection with a Sale not to exceed the Carve-Out Amount and (b) the Security Interest shall not be subject to Section 551 of the Bankruptcy Code.

**9.4**      <u>Cumulative Grants</u>:  The Security Interest and the administrative priority granted by and pursuant to this Agreement hereof may be independently granted by the Postpetition Loan Documents and by other Postpetition Loan Documents hereafter entered into.  This Agreement, the Interim Order, the Final Order and such other Postpetition Loan Documents supplement each other, and the grants, priorities, rights and remedies of Agent hereunder and thereunder are cumulative.

**9.5**      <u>Termination of Security Interest</u>:  The security interest granted to Lender under this Agreement shall not terminate unless and until all Postpetition Loan Obligations have been fully paid or performed (pursuant to <u>Section 5.2</u> or otherwise).

## SECTION 10.      Miscellaneous

**10.1**      No delay or omission of the Lender to exercise any right or remedy hereunder, whether before or after the happening of any Event of Default, shall impair any such right or shall operate as a waiver thereof or as a waiver of any such Event of Default.  No single or partial exercise by the Lender of any right or remedy precludes any other or further exercise thereof, or precludes any other right or remedy.

**10.2**      This Agreement and the Postpetition Loan Documents executed and delivered in connection therewith can be waived or changed only by a writing signed by each party hereto or thereto, and shall bind and benefit each party hereto or thereto and their respective successors and assigns, and any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**10.3**      In no event shall the Company, upon demand by the Lender for payment of any Postpetition Loan Obligations, by acceleration of the maturity thereof, or otherwise, be obligated

to pay interest and fees in excess of the amount permitted by law. Regardless of any provision herein or in any agreement made in connection herewith, the Lender shall never be entitled to receive, charge or apply, as interest on any Postpetition Loan Obligations, any amount in excess of the maximum amount of interest permissible under applicable law. If the Lender ever receives, collects or applies any such excess, it shall be deemed a partial repayment of principal and treated as such; and if principal is paid in full, any remaining excess shall be refunded to the Estate. This paragraph shall control every other provision hereof, the Postpetition Loan Documents and of any other agreement made in connection with the Postpetition Loans.

**10.4** If any provision hereof or of any other agreement made in connection herewith is held to be illegal or unenforceable, such provision shall be fully severable, and the remaining provisions of the applicable agreement shall remain in full force and effect and shall not be affected by such provision's severance. Furthermore, in lieu of any such provision, there shall be added automatically as a part of the applicable agreement a legal and enforceable provision as similar in terms to the severed provision as may be possible.

**10.5 THE COMPANY AND THE LENDER EACH HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF THE POSTPETITION LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREUNDER. THE COMPANY HEREBY IRREVOCABLY WAIVES PERSONAL SERVICE OF PROCESS AND CONSENTS TO SERVICE OF PROCESS BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED. IN NO EVENT WILL THE LENDER BE LIABLE FOR LOST PROFITS OR OTHER SPECIAL OR CONSEQUENTIAL DAMAGES. THE COMPANY AND THE LENDER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF INDIANA TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES PERTAINING DIRECTLY OR INDIRECTLY TO THIS AGREEMENT OR THE POSTPETITION LOAN DOCUMENTS OR TO ANY MATTER ARISING THEREFROM. THE COMPANY HERETO EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED IN SUCH COURT.**

**10.6** Except as otherwise herein provided, any notice or other communication required hereunder shall be in writing (provided that, any electronic communications from the Company with respect to any request, transmission, document, electronic signature, electronic mail or facsimile transmission shall be deemed binding on the Company for purposes of this Agreement, provided further that any such transmission shall not relieve the Company from any other obligation hereunder to communicate further in writing), and shall be deemed to have been validly served, given or delivered when hand delivered or one Business Day after deposit with a nationally recognized overnight delivery service, or three Business Days after deposit in the United States mails, with proper first class postage prepaid, return receipt requested, and addressed to the party to be notified or to such other address as any party hereto may designate for itself by like notice, as follows:

(A) if to the Company, at:

> Bill Collins
>
> _____
>
> _____
>
> _____
>
> Email address: bill@trellisearth.com
>
> with copies to:
>
> David R. Krebs
> TUCKER HESTER
> BAKER & KREBS, LLC
> One Indiana Square
> Indianapolis, IN 46204
> Direct: 317-608-1133
> Fax: 317-833-3031
> Email address: dkrebs@thbklaw.com

(B) if to the Lender, at:

> Golden Properties, Ltd.
>
> _____
>
> _____
>
> _____
>
> Email address:  alau@goldenproperties.ca
>
> with copies to:
>
> Thomas C. Scherer
> Bingham Greenebaum Doll LLP
> 10 West Market Street, #2700
> Indianapolis, Indiana 46204
> Phone: (317) 635-8900
> Facsimile:  (317) 236-9907
> Email address:  tscherer@bgdlegal.com

provided, however, that notices shall not be deemed given until received.

**10.7    THE VALIDITY, INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT AND THE OTHER POSTPETITION LOAN DOCUMENTS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF INDIANA, EXCEPT TO THE EXTENT THAT ANY OTHER POSTPETITION LOAN DOCUMENT INCLUDES AN EXPRESS ELECTION TO BE GOVERNED BY THE LAWS OF ANOTHER JURISDICTION, AND EXCEPT TO THE EXTENT THAT THE PROVISIONS OF THE BANKRUPTCY CODE ARE APPLICABLE AND SPECIFICALLY CONFLICT WITH THE FOREGOING.**

**10.8** In the event of any inconsistency between the terms of the Interim Order or Final Order, on the one hand, and this Agreement and the other Postpetition Loan Documents, on the other hand, the terms of the Interim Order and Final Order shall control.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be effective, executed, accepted and delivered by their proper and duly authorized officers as of the date set forth above.

**TRELLIS EARTH PRODUCTS, INC.**      **GOLDEN PROPERTIES, LTD**

By:_____      By:_____

Printed:_____      Printed:_____

Title:_____      Title:_____

**Schedule 1**

**Budget**

## EXHIBIT A

Form of Borrowing Notice

_____, 2016

Golden Properties, Ltd.

_____

_____

_____

_____:

The undersigned debtor in possession, Trellis Earth Products, Inc. (the "Company"), refers to the Postpetition Financing and Security Agreement dated as of February___, 2016 by and between the Company and Golden Properties, Ltd. (the "Lender"), as amended from time to time (the "Agreement"). (Capitalized terms used and not otherwise defined herein shall have the meanings given such terms in the Agreement.) The Company hereby provides notice, pursuant to Section 2.3 of the Agreement, that the Company requests a Postpetition Loan as set forth below.

1. Requested Postpetition Loan.

(a) The Company requests that a Postpetition Loan be advanced in the aggregate amount of $_____ to fund the purchase order attached hereto.

(b) The Company requests that the advance of the Postpetition Loan be made on the following Business Day:_____, 2016 which day is at least two Business Days following the date of this notice.

(c) Attached hereto is documentation supporting the expenses and/or professional fees to be paid by the Postpetition Loan.

2. Certifications. The Company hereby certifies to the Lender that the following statements will be true and correct on the date that the requested Postpetition Loan is made:

(a) All Postpetition Loans previously requested by the Company have been used in accordance with the Budget or as otherwise agreed by the Lender.

(b) The Postpetition Loans requested in this Borrowing Notice shall be used in accordance with the Budget.

(c) The representations and warranties contained in the Agreement and the other Postpetition Loan Documents are true and correct in all material respects, other than

17

representations and warranties that expressly relate solely to an earlier date (in which case they were true and correct on and as of such earlier date).

(d)     No Default or Event of Default has occurred and is continuing or would result from the requested Postpetition Loan.

The undersigned understands that the Lender is relying on the foregoing certification in making the requested Postpetition Loan to the Company and to induce the Lender to make the requested Postpetition Loan.  In addition, the undersigned understands that the Lender has sole discretion in deciding whether to make all or any portion of the requested Postpetition Loan as set forth in the Agreement, and the making of the request and certification above by the Company does not obligate the Lender to make the requested Postpetition Loan.

TRELLIS EARTH PRODUCTS, INC.


By:_____

**Trellis Earth Cash Plan 30 Days Draft**

| Orders (Purchase Orders Accepted) * | Qty | | Price | | Total Rev |
|---|---|---|---|---|---|
| Sysco | 3150 | $ | 25.00 | $ | 78,750 |
| Reinhardt | 580 | $ | 25.00 | $ | 14,500 |
| Metabolix | 150000 | $ | 0.36 | $ | 54,000 |
| Metabolix | 1 | $ | 18,000.00 | $ | 18,000 |
| | | | | $ | 165,250 |

| Cash Needed for 30 Days | | |
|---|---|---|
| Direct Labor | $ | 36,000.00 |
| Materials (trays) | $ | 42,840.00 |
| Utilities | $ | 14,000.00 |
| Packaging | $ | 3,937.50 |
| Freight | $ | 3,600.00 |
| Maint | $ | 5,000.00 |
| Supervision | $ | 5,000.00 |
| Quality | $ | 3,500.00 |
| Admin | $ | 32,000.00 |
| Legal Fees | $ | 40,000.00 |
| **Total Cash Outflow** | $ | **(185,877.50)** |

| Cash Inflow 30 Days | | |
|---|---|---|
| DIP | $ | 140,000.00 |
| Metabolix prepayment and COD receipts | $ | 72,000.00 |
| (in February) | $ | 212,000.00 |

| Net Difference inflow/(outflow) | $ | 26,122.50 |
|---|---|---|

| **Receivable Balance (for March collection)** | $ | **93,250.00** |
|---|---|---|

* We expect to receive purchase orders for additional production in first couple weeks of 30 day plan which will contribute to next month's cashflow



EXHIBIT

B